

FILED / ENTERED / RECEIVED / SERVED ON COUNSEL/PARTIES OF RECORD
NOV 25 2013
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

Daniel G. Bogden
United States Attorney
District of Nevada
Timothy S. Vasquez
Assistant United States Attorney
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
702-388-6336

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> vs. <br><br> [10] DELYANA NEDYALKOVA, <br><br> Defendant | Case No. 2:11-CR-434-LDG-PAL <br><br> **PLEA AGREEMENT UNDER** <br> **FED.R.CRIM.P. 11 (c)(1)(A & B)** |

THE UNITED STATES OF AMERICA, by the United States Attorney and undersigned Assistant United States Attorney, and defendant DELYANA NEDYALKOVA, with the advice and counsel of her undersigned attorney, submit this Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(A and B).

## I. SCOPE OF AGREEMENT

The parties to this Plea Agreement are the UNITED STATES OF AMERICA and DELYANA NEDYALKOVA, the defendant. This Plea Agreement binds defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court. The Plea Agreement sets forth the parties' agreement regarding criminal charges

referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It does not control or prohibit the UNITED STATES or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against defendant.

## II. DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

**A.** **Guilty Plea:** Defendant knowingly and voluntarily agrees to plead guilty to the charge of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 as set forth in Count Two of the superseding indictment pending in this case. Defendant also agrees to the forfeiture of the property set forth in the Forfeiture Allegations of the superseding indictment.

**B.** **Waiver of Trial Rights:** Defendant understands that she is presumed innocent and has the right to maintain her plea of not guilty and require that the government prove her guilt beyond a reasonable doubt at trial. Defendant acknowledges that she has been advised and understands that by entering a plea of guilty she is waiving –that is, giving up – her right to a trial and related rights guaranteed to all defendants by the Constitution and laws of the United States. Specifically, defendant is giving up:

(1) The right to trial by jury (or to a trial by a judge if the parties both were to so agree);

(2) The right to confront and cross-examine the witnesses against her at trial;

(3) The right to remain silent with assurance that her silence could not be used against her in any way;

(4) The right to testify in her own defense at trial if she so chooses;

(5) The right to compel witnesses to appear at trial and testify in her behalf; and

(6) The right to have the assistance of an attorney at all stages of such proceedings.

2

C.  **Withdrawal of Guilty Plea:** Defendant will not seek to withdraw her guilty plea after she has entered it in court.

D.  **Additional Charges:** Provided that defendant fulfills all of her promises and responsibilities under this Plea Agreement, the UNITED STATES agrees to move to dismiss any additional charges pending against defendant in this case at the time of sentencing, and agrees not to bring additional charges against defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States Attorney's Office for the District of Nevada with the exception of charges pertaining to any crimes of violence. The UNITED STATES expressly reserves the right to bring charges for any additional crime of violence as defined in 18 U.S.C. § 16.

## III. ELEMENTS OF THE OFFENSE

The offense of conspiracy to commit wire fraud in violation of 18 U.S.C. 1349 has the following two elements:

(1) Within the period alleged in the indictment (i.e., during the span from December 2008 to December 2011), there was an agreement between two or more persons to commit wire fraud in violation of 18 U.S.C. § 1343 as charged in the indictment; and

(2) Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

See NINTH CIR. MODEL CRIMINAL JURY INSTRUCTION § 8.20 (2010 ed.).

## IV. FACTS SUPPORTING GUILTY PLEA

A. Defendant will plead guilty because she is, in fact and under the law, guilty of the crimes charged.

B. Defendant acknowledges that if she elected to go to trial instead of pleading guilty, the UNITED STATES could prove her guilt beyond a reasonable doubt and establish its right to forfeit the specified property or a money judgment. Defendant further acknowledges that her admissions and declarations of fact set forth below satisfy every element of the charged offenses.

C. Defendant waives any potential future claim that the facts she admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offenses.

D. Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct.

(1). Beginning at a time unknown, but not later than December 2008, persons within and persons outside of the United States combined and conspired to defraud and obtain money from other persons by false and fraudulent pretenses, promises and representations. Towards these ends, one or more of the conspirators listed and offered items for sale though on-line marketplaces and forums such as eBay, Craigslist and AutoTrader. Through such listings the conspirators offered automobiles, travel trailers, watercraft, equipment and other items for sale. The conspirators typically offered such items at attractive prices and often elaborated that personal exigencies (e.g., unemployment, military deployment, or deaths) required that they sell the offered items quickly.

(2) Once prospective buyers agreed to purchased items offered by the conspirators,

the buyers would typically be informed that their purchases would be shipped upon receipt of payment.  To gain the buyers' confidence, the schemers advised buyers that their purchase money would be held securely in escrow until the transaction was complete to ensure the safety of their funds.  As part of this ruse, the schemers often advised buyers that the purchase transaction would be completed via eBay or comparable on-line markets or financial services.  The schemers also often provided buyers with internet addresses or links to sham websites that appeared to be operated by eBay or similar on-line services and marketplaces.

(3) Posing as agents of eBay or other on-line marketplaces, one or more of the schemers would communicate with buyers via the internet.  The schemers instructed buyers to electronically transfer or wire transfer purchase money to designated individuals. Buyers were instructed that the individuals designated to receive the funds were employees or representatives of eBay or other on-line marketplaces or financial services who were to serve as escrow agents for the transaction.  Buyers were assured that the designated escrow agents would hold their funds until the buyers received, inspected and accepted the purchased items.

(4) Relying on the schemers' false and fraudulent pretenses, promises and representations, , multiple buyers agreed to purchase items that the schemers fraudulently listed and offered through on-line marketplaces and newspaper advertisements.  The buyers transferred thousands of dollars to the purported escrow agents whom the schemers had designated to receive those funds.

(5) In truth, the purported escrow agents were not employees or agents of

eBay or any other internet marketplace or financial service. Rather, the designated recipients of the purchase money were actually members and abettors of the conspiracy. Although the conspirators did not deliver any of the promised or purchased items to the buyers, the purported escrow agents did not hold the purchase money secure but instead delivered the funds to the scheme's organizers and managers who thereafter distributed the proceeds among the conspirators.

(6) Individual recipients posing as escrow agents could only repeat this fraudulent scheme for a limited period before their fraudulent conduct was detected and they were barred by Western Union, MoneyGram and other such remittance services. Consequently, leaders and managers of the scheme perpetually recruited others to receive money in furtherance of the scheme.

(7) DELYANA NEDYALKOVA joined the conspiracy not later than June 2009. NEDYALKOVA was recruited by an associate of [1] EDUARD PETROIU to act as a purported escrow agent for purposes of receiving money from victims of the scheme in multiple fraudulent transactions.

    (a)    For example, in June 2009, one or more of the schemers offered a 1970 Chevrolet Chevelle for sale on the Autotrader.com website. This advertisement drew the interest of E.T., a would-be-buyer, who contacted the purported seller via the e-mail address provided in the Autotrader.com listing. E.T. agreed through e-mails and other wire communications to purchase the 1970 Chevelle, and he was advised that the transaction would be completed through eBay. E.T. was subsequently contacted telephonically by a schemer using the name or

alias "Diego." "Diego" instructed E.T. to submit payment for the Chevelle in two separate wire transfers via MoneyGram. More particularly, E.T. was instructed to send the purchase funds to Gary Oddson and DELYANA NEDYALKOVA in two wire transfers. Pursuant to those instructions, E.T. wire transferred $5,100 to Gary Oddson on June 22, 2009, and $4,800 to DELYANA NEDYALKOVA on June 24, 2009. DELYANA NEDYALKOVA thereafter picked-up the $4,800 wire transfer on behalf of the conspiracy. The would-be purchaser did not receive the promised automobile and was defrauded of the $4,800 purchase money.

(b) DELYANA NEDYALKOVA posed as the escrow agent to receive funds from multiple victims of the scheme. In this manner, ~~PASCUA~~ NEDYALKOVA personally received more than $84,000 from 14 victims of the fraudulent scheme on behalf of the conspiracy.

(8) During the span of the conspiracy, DELYANA NEDYALKOVA married co-conspirator [2] VLADIMIR BUDESTEAN. While married to BUDESTEAN, NEDYALKOVA assisted in the conspiracy. Among other things, NEDYLAKOVA: attempted to recruit individuals to receive wire-transfers for the conspiracy; conveyed messages to and from BUDESTEAN and other conspirators in furtherance of the conspiracy; and on at least one occasion drove a designated recipient to a money remittance service where he picked-up a wire transfer as part of the conspiracy.

(9) Defendant affirmatively admits: that there was a conspiracy among two or more

7

persons to defraud others and to obtain money by means of false and fraudulent promises, pretenses and representations; that as part of the conspiracy, email messages and funds were transmitted by means of the interstate wire; and that she knowingly joined that conspiracy.

## V. COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If defendant does not plead guilty or withdraws her guilty pleas, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on defendant's behalf. Defendant expressly waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI. APPLICATION OF SENTENCING STATUTES

A. **Maximum Penalty:** The maximum penalty for conspiracy to commit wire fraud is the same as the penalty for wire fraud, that is: a term of imprisonment of not more than 20 years, see 18 U.S.C. §§ 1349 and 1343, and a fine of not greater than twice the gross loss or, alternatively, not more than $250,000, see 18 U.S.C. § 3571(b), or both.

B. **Factors Under 18 U.S.C. § 3553:** The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining defendant's sentence.

**C.** **Supervised Release:** In addition to imprisonment and a fine, defendant will be subject to a term of supervised release not to exceed three (3) years for each count of conviction. *See* 18 U.S.C. § 3583(b)(2). Supervised release is a period of time after release from prison during which defendant will be subject to various restrictions and requirements. If defendant violates any condition of supervised release, the Court may order defendant's return to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum prison sentence identified above.

**D.** **Special Assessment:** Defendant will pay a $100.00 special assessment per count of conviction at the time of sentencing.

## VII. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

**A.** **Discretionary Nature of Sentencing Guidelines:** Defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

**B.** **Offense Level Calculations:** The parties stipulate to and jointly recommend the following calculation of the defendant's Offense Level under the Sentencing Guidelines. The parties agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions. Further, the defendant expressly understands and acknowledges that neither these stipulations nor the Sentencing Guidelines bind the Court. Further, defendant affirmatively acknowledges that the Court may impose any sentence within the statutory maximum notwithstanding any applicable Sentencing Guidelines provisions.

(1) <u>Base Offense Level:</u>         7                    [USSG §§ 2X1.1, 2B1.1(a)]

Sentencing Guidelines § 2B1.1 prescribes a Base Offense Level of 7 for defendant's offense.

(2) <u>Specific Offense Characteristics:</u>

   (a)   <u>Amount of Actual and Intended Loss:</u>  + 8    [USSG §2B1.1(b)(1)]

The parties agree and stipulate for the purposes of this Plea Agreement that this defendant should be held jointly accountable for losses of more than $70,000, but less than $120,000, warranting an 8 Level increase to her Base Offense Level under Sentencing Guidelines § 2B1.1(b)(1).

   (b)   <u>Number of Victims:</u>                + 2    [USSG § 2B1.1(b)(2)]

The parties agree and stipulate for the purposes of this Plea Agreement that this defendant received funds from more than 10 (but less than 50) victims defrauded as part of the scheme and conspiracy warranting a 2 Level enhancement under Sentencing Guidelines § 2B1.1(b)(2).

   (c)   <u>Sophisticated Means / Extraterritoriality:</u>  + 2   [USSG § 2B1.1(b)(10)]

The parties agree and stipulate for the limited purposes of this Plea Agreement that defendant's offense was part of a sophisticated scheme, and a substantial part of the fraudulent scheme was committed from outside the United States. A 2 Level increase is thus warranted under Sentencing Guidelines § 2B1.1(b)(10).

(3) <u>Role:</u>                        + 0                [USSG §§ 3B1.1 & 3B1.2]

For purposes of this plea agreement, the parties agree that defendant was not an organizer, leader, manager or supervisor of the conspiracy and an Aggravating Role adjustment is therefore not warranted under § 3B1.1 of the Sentencing

Guidelines. The parties further agree that a Mitigating Role adjustment is not appropriate under the terms of this plea agreement because defendant is being held accountable only for the criminal conduct and losses for which she is directly responsible (i.e., transactions in which she received wire transfers on behalf of the conspiracy).

(4) <u>Adjusted Offense Level:</u>            19

The foregoing adjustments for Specific Offense Characteristics yield an Adjusted Offense Level of 13.

(5) <u>Acceptance of Responsibility:</u>    - 3            [USSG § 3E1.1]

Pursuant to § 3E1.1(a) of the Sentencing Guidelines, the UNITED STATES will recommend that defendant receive a two-level downward adjustment for acceptance of responsibility unless he:

(a) Fails to truthfully admit facts establishing a factual basis for the guilty plea when she enters the plea;

(b) Fails to truthfully admit facts establishing the amount of restitution owed when she enters her guilty plea;

(c) Fails to truthfully admit facts establishing the forfeiture allegations when he enters her guilty plea;

(d) Provides false or misleading information to the UNITED STATES, the Court, Pretrial Services, or the Probation Office;

(e) Denies involvement in the offense or provides conflicting statements regarding her involvement or falsely denies or frivolously contests conduct relevant to the offense;

(f) Attempts to withdraw her guilty plea;

      (g)     Commits or attempts to commit any additional crime;

      (h)     Fails to appear in court; or

      (i)     Violates any condition of pretrial release.

Further, the UNITED STATES will move for an additional one-level downward adjustment for timely acceptance of responsibility under §3E1.1(b) of the Sentencing Guidelines provided that defendant communicates her decision to plead guilty in a sufficiently timely manner to allow the UNITED STATES to avoid preparing for trial and to efficiently allocate its resources.

(6) <u>Joint Negotiations and Package Plea Agreements:</u>   -2 or -3

The defendant has knowingly and of her own accord and tactical judgment, chosen to join with her co-defendants in negotiate this plea agreement with the government as part of a package plea in the interest of conserving government and judicial resources.  While the guilty plea of a single defendant would not significantly alter the burden of production at trial, guilty pleas from all of the defendants would relieve the government of producing evidence pertaining solely to these defendants and conserve judicial and government resources. Therefore, if all of the defendants plead guilty pursuant to the parties' joint negotiations, the parties will jointly recommend a 3 Level departure. However, if all of the defendants except [5] EVGHENII RUSSU plead guilty, the parties will recommend a 2 Level departure.

(7) <u>Total Offense Level:</u>             14 or 13

The Sentencing Guidelines calculations recommended by the parties, if adopted and applied by the Court, would result in a Total Offense Level of 13 if all of the defendants plead guilty, or 14 if all of the defendants except EVGHENII RUSSU

plead guilty, and if defendant is awarded a full 3 Level downward adjustment for Acceptance of Responsibility.

**C.     Criminal History Category:** Defendant acknowledges that the Court may base her sentence in part on her criminal record or Criminal History. The parties have not entered into a stipulation regarding her Criminal History, and defendant understands and acknowledges that the Court will determine her Criminal History Category under the Sentencing Guidelines.

**D.     Relevant Conduct:** The Court may consider any counts dismissed under this Plea Agreement and all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

**E.     Additional Sentencing Information:** The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw her guilty plea.

Defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for defendant to withdraw her guilty plea.

## VIII. POSITIONS REGARDING SENTENCE

**A.     No Departures or Variance from the Sentencing Guidelines:** In consideration of the parties' respective promises and benefits conferred under this Plea Agreement, neither party will request a departure nor a variance from the Sentencing Guidelines sentencing range as determined by the Court unless both parties agree in writing to the propriety of such a departure or variance.

**B.     Recommendation:** The parties will each recommend that the Court impose a sentence within the Sentencing Guidelines recommended sentencing range determined by the Court. Further, the UNITED STATES will recommend that the Court impose a sentence at the lower end of the Sentencing Guidelines recommended sentencing range unless defendant commits any act that could result in a loss of the downward adjustment for acceptance of responsibility. Defendant acknowledges that the Court does not have to follow the parties' recommendations. Notwithstanding its agreement to recommend a low-end sentence, the UNITED STATES reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

## IX. RESTITUTION

In exchange for benefits received under this Plea Agreement, defendant agrees to make full restitution in an amount to be determined by the Court for all of the losses defendant caused by her schemes or offenses, whether charged or uncharged, pled to or not, and by all of her relevant conduct. 18 U.S.C. § 3663(a)(3). Defendant cannot discharge her restitution obligation through bankruptcy proceedings. Defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## X. FORFEITURE

**A.    Forfeiture of Property:** Defendant knowingly and voluntarily agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the interests, proceeds, money and property (collectively referred to herein as the "property") described in the Forfeiture Allegations of the superseding indictment. Defendant affirmatively abandons or forfeits the property to the United States, and relinquishes any and all right, title, and interest in the property.

**B.    Forfeiture Distinct from Restitution, Assessments and Fines:** Defendant understands and expressly acknowledges that the forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or other penalty the Court may impose upon the defendant in addition to the forfeiture. Defendant also acknowledges that the amount of the forfeiture may differ from (and may be significantly greater than) the amount of restitution.

**C.    Waivers:** Defendant agrees not to contest or litigate the forfeiture of the property, and she agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property. Further, defendant expressly waives her substantive and procedural rights regarding forfeiture of the property including:

(1) Any trial or hearing (including any abandonment proceedings, civil administrative forfeiture proceedings, civil judicial forfeiture proceedings, or criminal forfeiture proceedings) to which she might otherwise be entitled regarding forfeiture of the property;

(2) Any further notice to defendant, her agents, or her attorney regarding the abandonment, forfeiture and disposition of the property;

(3) Service of process of any and all documents filed in this action or any

proceedings concerning the property arising from the facts and circumstances of this case;

(4) Any legal or equitable defense or objection to the forfeiture of the property including, but not limited to, any defense or objection that might be brought under the statute of limitations, CAFRA, Fed. R. Crim. P. 7 and 32.2;

(5) Any defense or objection to the forfeiture of the property under the Constitution, including, but not limited to, any defense or objection that might be brought under the Due Process Clause and Double Jeopardy Clause of the Fifth Amendment or the Excessive Fines Clause of the Eighth Amendment.

**D.** **Entry of Order of Forfeiture**: Defendant knowingly and voluntarily agrees to the entry of an Order of Forfeiture of the property to the United States. Defendant further agrees that forfeiture is immediately due and payable and subject to immediate collection by the United States.

## XI. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the UNITED STATES or the Probation Office, defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning her assets and her ability to pay. Defendant will surrender assets she obtained directly or indirectly as a result of her crimes, and will release funds and property under her control in order to pay any fine, forfeiture, or restitution ordered by the Court.

XII. **DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS**

    A.    **Plea Agreement and Decision to Plead Guilty:** Defendant acknowledges that:

        (1) She has read this Plea Agreement and understands its terms and conditions;

        (2) She has had adequate time to discuss this case, the evidence, and this Plea Agreement with her attorney;

        (3) She has discussed the terms of this Plea Agreement with her attorney;

        (4) The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV;

        (5) She was not under the influence of any alcohol, drug, or medicine that would impair her ability to understand the Agreement when she considered signing this Plea Agreement and when she signed it;

        (6) Defendant, with the advice and counsel of her attorney, had a choice to proceed to trial rather than pleading guilty, and defendant decided and chose to enter her guilty plea knowing of the charges brought against her, her possible defenses, and the benefits and possible detriments of proceeding to trial; and

        (7) Defendant decided to plead guilty voluntarily, and that no one coerced or threatened her to plead guilty or enter into this Plea Agreement.

    B.    **Waiver of Appeal and Post-Conviction Proceedings:** Defendant knowingly and expressly waives:

        (1) The right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court;

        (2) The right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture;

1   (3) Any and all collateral challenges, including any claims under 28 U.S.C. § 2255,
2       to her conviction, sentence, and the procedure by which the Court adjudicated
3       guilt and imposed sentence, except non-waivable claims of ineffective assistance
4       of counsel.
5  Further, defendant agrees and acknowledges that the UNITED STATES is not obligated or
6  required to preserve any evidence obtained in the investigation of this case.
7       C.   **Removal/Deportation Consequences**: Defendant understands and
8  acknowledges that if she is not a United States citizen, then it is highly probable that she will be
9  permanently removed (deported) from the United States as a consequence of pleading guilty
10 under the terms of this Plea Agreement. Defendant has also been advised if her conviction is
11 for an offense described in 8 U.S.C. § 1101(a)(43), she will be deported and removed from the
12 United States and will not be allowed to return to the United States at any time in the future.
13 Defendant desires to plead guilty regardless of any immigration consequences that may result
14 from her guilty plea, even if the consequence is automatic removal from the United States with
15 no possibility of returning. Defendant acknowledges that she has specifically discussed these
16 removal/deportation consequences with her attorney.
17
18 **XIII.   ADDITIONAL ACKNOWLEDGMENTS**
19      This Plea Agreement resulted from an arms-length negotiation in which both parties
20 bargained for and received valuable benefits in exchange for valuable concessions. It
21 constitutes the entire agreement negotiated and agreed to by the parties. No promises,
22 agreements or conditions other than those set forth in this agreement have been made or implied
23 by defendant, defendant's attorney, or the UNITED STATES, and no additional promises,
24

18

agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

                                                  Daniel G. Bogden
                                                  United States Attorney

DATE 25 Nov 2013

                                                  Timothy S. Vasquez
                                                  Assistant United States Attorney

DATE 11/21/13

                                                  DELYANA NEDYALKOVA
                                                  Defendant

DATE 11/21/13

                                                  Herbert Sachs
                                                  Defense Counsel